UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR162 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | <u>ORDER</u> |
| RICHARD PURNELL, | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant Richard Purnell's motion for a new trial. The motion is DENIED.

Purnell's jury trial was conducted on August 30, 2016 through September 6, 2016. On September 6, 2016, the jury convicted Purnell on the sole count in the indictment. On November 4, 2016, Purnell moved for a new trial. The Government filed its opposition on December 5, 2016. Purnell replied in support of his motion on December 13, 2016. The Court now resolves the motion.

**NEW TRIAL STANDARD**

Rule 33 provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). The rule

"does not define 'interest[ ] of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). However, "it is widely agreed that Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

**RIGHT TO PRESENT WITNESSES ON HIS BEHALF**

Purnell first asserts that a new trial is warranted because he was denied the right to call witnesses on his own behalf. Specifically, Purnell contends that the Government improperly intimidated Ronnie Pratt, Jr. thereby causing him to invoke his Fifth Amendment rights. The Sixth Circuit has expressed the standard for reviewing such a claimed error as follows:

> A defendant's right to present his own witnesses to establish a defense constitutes a fundamental element of due process and is protected by the Compulsory Process Clause of the Sixth Amendment. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Various prosecutorial and judicial actions aimed at discouraging defense witnesses from testifying deprive a defendant of this right. *See, e.g., Webb v. Texas*, 409 U.S. 95, 98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam) (reversing a conviction when the trial judge severely admonished the sole witness proffered by the defense who declined to testify as a result); *Thomas*, 488 F.2d at 336 (reversing a conviction obtained after a Secret Service agent in an ex parte communication advised a defense witness of possible prosecution if he testified). Neither *Webb* nor *Thomas*, however, "stand[s] for the proposition that merely warning a witness of the consequences of perjury demands reversal." *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995) (citing *United States v. Smith*, 997 F.2d 674, 679–80 (10th Cir. 1993)). For this reason governmental conduct must amount to a substantial interference with a witness's free and unhampered determination to testify before we will find a violation of due process or the Sixth Amendment. *Id*. at 833 (citing *Smith*, 997 F.2d at 680). Even when such interference occurs, a violation of a defendant's right to call witnesses in his defense is subject to harmless error analysis. *United States v. Foster*, 128 F.3d 949, 953 & n. 4 (6th Cir. 1997).

*United States v. Emuegbunam*, 268 F.3d 377, 400 (6th Cir. 2001).

In the instant matter, Purnell claims that conversations between Assistant United States Attorney Bridget Brennan and counsel for Pratt, Attorney William Norman, violated his right to

compulsory process. The Court finds no merit in such a contention.

*In Trial Discussion*

The issue of Pratt's testimony was discussed at length *during* the trial of this matter. Following an interview by Purnell's counsel, Attorney Norman was contacted by AUSA Brennan. Purnell's counsel asserted during trial that Attorney Norman "was advised that -- he was advised by AUSA Brennan that if Mr. Pratt were to testify on behalf of Mr. Purnell and testify as to the things he wanted to testify to, that he was in danger of losing his acceptance of responsibility before Judge Boyko at sentencing." Doc. 58 at 149. Purnell's counsel continued by offering: "And then I later learned from Mr. Pratt's lawyer that today he was in -- he spoke with [AUSA] Barr.[1] And [AUSA] Barr basically made statements to him concerning, you know, there is a lot of other juveniles out there that we think may be involved with your client. He's not only in danger of losing acceptance points, but he could also lose points for -- have points added for obstruction, things of that nature." Doc. 58 at 151. In response, AUSA Brennan gave her version of her conversation with Attorney Norman:

> And I spoke with Mr. Norman because it was important. When I heard that he was going to testify, it was incumbent upon me to let Mr. Norman know that if he testified in a manner that's inconsistent with the factual basis or if he testified in a manner that was inconsistent with what our evidence was, yes, we would have – it's in the plea agreement.
>
> …
>
> Your Honor, to be clear, I did not ever say that defense counsel should not be allowed – Purnell's defense counsel should not be allowed. I did not say -- and I had witnesses to the conversation. I had people with me. I never said any such thing. I did say that if he testifies in a manner that's inconsistent with the plea agreement, that he could run afoul potentially of acceptance of responsibility. But also even in the plea agreement it says if he does something that's considered obstructive, the plea agreement – these are all points that are set forth in the plea agreement. So I

---
1 AUSA Barr was co-counsel to AUSA Brennan during trial of this matter.

pointed them out to defense counsel and said you need to consider these points.

Doc. 58 at 155, 157.

Thereafter, Attorney Norman offered his view on the conversation he had with AUSA Brennan:

> Second, to be very clear, [AUSA] Brennan did not say if your client testifies, he will face some harsher sanction. She did say specifically that -- and I asked the pointed question. I said, are you saying that if he testifies that he never personally received funds or never personally met Mr. Purnell, that you would seek to argue against his acceptance of responsibility. And she did say yes to that.
>
> But I don't want that to be confused with some general if you testify we will come after you.

Doc. 58 at 161. Attorney Norman further indicated: "I did not take the conversation from [AUSA] Brennan as kind of overtly inappropriate or something. I just -- she was telling me something about the case. And I responded to it." Doc. 58 at 164.

The Court also allowed defense counsel to voir dire Pratt to ensure that he was indeed invoking his Fifth Amendment rights. Before Pratt took the stand, the Court informed him that he would be placed under oath and that "[i]f you have any questions or you wish to speak with your counsel, please let us know." Doc. 58 at 140. Purnell's counsel then inquired, and Pratt responded that he would invoke his Fifth Amendment rights with respect to all lines of inquiry related to Purnell.

*Affidavits in Support of Motion*

In support of the instant motion, Attorney Norman submitted an affidavit that directly conflicts with the statements he made in open Court. In his affidavit, Attorney Norman swears that AUSA Brennan called him and "began berating [him] and questioning [his judgment]." Doc. 66-2 at 2. Counsel notes that he was "surprised at the intensity of her anger" and that he "believed

[he] was being bullied." Doc. 66-2 at 2. Attorney Norman then detailed an alleged encounter with AUSA Barr:

> 21. I entered the Courtroom prior to trial, and was then confronted by another assistant US attorney named Ms. Barr. Ms. Barr who immediately started to ask me about conversations I had with my client Mr. Pratt, and how he would answer questions about other juveniles not listed in his indictment. I found the questions inappropriate and asked her why she believed I should tell her about my conversations with my client.
>
> 22. Ms. Barr proceeded to tell me that she could not believe that I was letting my client testify before he was sentenced, and that if he testified in any way that was contrary to the evidence that the government presented, that they would not only seek to take away his credit for acceptance of responsibility, but also would pursue an enhancement for obstruction of justice.
>
> 23. I told Ms. Barr that I knew what she was doing, that I did not appreciate it, that I no longer wished to speak with her, and asked her to leave the space in the gallery where I was sitting. She stayed in my space and said that this was her trial and that she did not have to go anywhere. She also said that she looked forward to meeting me again in the future, which I took as a veiled threat.

Doc. 66-2 at 3. Attorney Norman then concluded his affidavit with the following:

> 30. But for the government's various threats and admonishments, I would not have advised my client to invoke his Fifth Amendment rights, and would have advised him that I did not believe his testimony, as discussed, would in any way breach his plea agreement, nor would it call into question his acceptance of responsibility.

Doc. 66-2 at 4.

Pratt also offered an affidavit in support of the motion for new trial. In that affidavit, Pratt swore as follows:

> Mr. Norman advised me that he had recently been in contact with the Assistant United States Attorney that was handling mine and Mr. Purnell's case. Mr. Norman advised me that the prosecutor warned that if I said anything different than what I said in my plea agreement that I could lose my acceptance of responsibility points at sentencing and face a much longer sentence than I was anticipating. Specifically, he told me that the government lawyer stated that if I testified that I never met Mr. Purnell and received money from him directly that she would consider such testimony to be a breach of my plea agreement with the government.

Doc. 66-1 at 4.

*Analysis*

In review of this issue, the Court would first note that the Court gives little to no weight to the affidavit supplied by Attorney Norman. While counsel described being "berated" and "bullied" by multiple Assistant United States Attorneys, his affidavit stands in stark contrast to his statements in open court. As detailed above, during his discussion with the Court, counsel for Pratt noted that he **did not** find the conversation with government counsel "overtly inappropriate or something. I just -- she was telling me something about the case. And I responded to it." Attorney Norman was given the full opportunity to make a record of this alleged "bullying" and instead informed the Court that the parties engaged in a professional discussion. Similarly, Pratt's affidavit does not suggest that Attorney Norman informed him that he had been threatened or berated by the Government's counsel. Rather, Pratt's affidavit is consistent with Attorney Norman's in-court statements that the Government informed him that Pratt risked losing his acceptance of responsibility if he testified inconsistent with his plea agreement. As such, the Court gives little to no weight to Attorney Norman's affidavit.

At its core, the proceedings before this Court and the interactions between counsel can be summarized as follows. Upon learning that Pratt would be called to testify, AUSA Brennan contacted Attorney Norman and informed him that if Pratt testified in a manner inconsistent with the factual basis in his plea agreement, then he risked losing acceptance of responsibility. It is apparent from the record that the parties disagreed about whether portions of Pratt's proffered testimony would in fact be in conflict with the factual basis of his plea agreement. The Government was consistent in its belief that the testimony would be in conflict.

Contrary to the arguments raised by counsel herein, this Court has found no case in which

a benign conversation with counsel for a witness has led to a finding that a defendant's rights were violated. Pratt knowingly and voluntarily entered into a plea agreement with the Government. Upon learning that Pratt would testify, the Government informed him of the risks associated with testifying and the possible impact on his plea agreement and sentencing. Unlike the discussions in *United States v. Thomas*, 488 F.2d 334 (6th Cir. 1973), none of the discussions occurred in the presence of the jury in this matter. Moreover, unlike the agent in *Thomas*, the Government's counsel herein had her discussions exclusively with counsel. In fact, *Thomas* makes clear that advising a witness of the potential consequences of testifying is entirely appropriate: "The transcript reveals that both the District Judge and counsel for the co-defendant Thomas went to considerable lengths to advise Asaro that his decision to testify should be based on full knowledge of the consequences, confirmed through his own counsel." *Id.* at 336.

*Webb v. Texas*, 409 U.S. 95 (1972) also offers no support for Purnell. In *Webb*, the Supreme Court discussed the "unnecessarily strong words" used by the trial judge when advising a potential witness of the consequences that could flow from testifying. No such strong words exist in the record before this Court. As such, *Webb* similarly offers no support for Purnell's argument that his rights were violated.

Consistent with the above, the Court finds no support for Purnell's contention that his ability to present witnesses was improperly restricted by the actions of the Government. Instead, it appears that the Government acted entirely appropriately when it informed Attorney Norman that Pratt risked losing acceptance of responsibility if he testified inconsistent with the facts in his plea agreement. Accordingly, Purnell's argument for a new trial based upon this premise is rejected.

**IMPROPER JURY INSTRUCTIONS**

Purnell next contends that his rights were violated when the Court instructed the jury as follows:

> The second element of the offense that the government must prove beyond a reasonable doubt is that the defendant knew or was in reckless disregard of the fact that Victim Number 1 was under the age of 18.
>
> A) the phrase "reckless disregard of the fact" means deliberate indifference to fact that, if considered and weighed in a reasonable manner, indicate the highest probability that the victim was under the age of 18. In evaluating this element, you may consider whether the defendant had a reasonable opportunity to observe Victim Number 1.

Doc. 59 at 32-33. Purnell contends that the Court's final instruction, allowing the jury to consider the defendant's reasonably opportunity to observe the victim in determining whether he acted with reckless disregard, was given in error.

> The statute at issue provides as follows:
>
> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> …
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).
>
> …
>
> (c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

18 U.S.C. § 1591.

In his argument, Purnell appears to contend that by giving the instruction above, the Court allowed a constructive amendment of the indictment. The Court disagrees. The Court did not instruct the jury under § 1591(c). That is, the jury was not instructed that the Government need not prove that the defendant knew or recklessly disregarded the victim's age. In fact, the jury was instructed that the Government was required to prove beyond a reasonable doubt one of those two mental states. As such, no constructive amendment of the indictment occurred.

Furthermore, contrary to counsel's argument, the jury was never permitted or instructed that it could find any element of the offense at any standard below beyond a reasonable doubt. The jury was instructed that when considering whether Purnell was reckless, they could consider his reasonable opportunity to view the victim. That instruction did not alter or lessen the Government's burden of proof. In fact, the Court reiterated on more than one occasion that the Government was required to prove every element beyond a reasonable doubt.

Additionally, "juries are entitled to consider many different types of facts when determining whether a defendant recklessly disregarded a victim's minority status, including the victim's 'appearance or behavior,' 'information from the victim, or others,' and '[c]ircumstances of which a defendant was aware, such as the victim's grade level in school, or activities in which the victim engaged[.]'" *United States v. Jackson*, 622 F. App'x 526, 529 (6th Cir. 2015) (citation omitted). As such, Purnell cannot demonstrate that it was error to allow the jury to consider his opportunity to observe the victim when it considered whether he acted in reckless disregard.

**VAGUENESS**

Finally, Purnell contends that the phrase "reasonable opportunity to observe" is

impermissibly vague. Initially, the Court would note that because the Court did not instruct under § 1591(c), Purnell's vagueness challenge is wholly misplaced. However, even if the Court were to consider a vagueness challenge to its jury instruction, it would find no merit in such an argument.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). An important aspect of the vagueness doctrine is that the "legislature establish minimal guidelines to govern law enforcement." *Id.* at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). The relevant inquiry is "what a person of common intelligence would reasonably understand the statute to proscribe, not what the particular defendant understood the statute to mean." *United States v. Washam*, 312 F.3d 926, 930 (8th Cir. 2002) (citations omitted) (internal quotation marks omitted).

> In reviewing a statute challenged on vagueness grounds, the Sixth Circuit has explained: "where a statute's language is 'clear and unambiguous, we can proceed no further in our examination except in very limited situations.'" *Skinner*, 25 F.3d at 1318 (quoting *Barker v. Chesapeake & Ohio R.R.*, 959 F.2d 1361, 1366 (6th Cir. 1992)). Since "[t]he classification of a federal statute as void for vagueness is a significant matter ... [,] '[e]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1105 (6th Cir. 1995) (quoting *Chapman v. United States*, 500 U.S. 453, 464 (1991)). Thus, in reviewing Defendants' "void for vagueness" challenge in this case, the Court must first review the language of the statute itself and determine if persons of ordinary intelligence could contemplate what is prohibited.

*United States v. Copsy*, No. CRIM A 06-42 DLB, 2006 WL 2540372, at *1–2 (E.D. Ky. Aug. 31, 2006).

Courts have previously addressed and rejected the challenge that Purnell raises to § 1591(c):

> In *United States v. Robinson*, 702 F.3d 22 (2nd Cir. 2012), the defendant challenged 18 U.S.C. § 1591(c) on vagueness grounds. Viewed in context, the Second Circuit concluded that "the most natural reading of this provision is that proof that the defendant had a reasonable opportunity to observe the victim may substitute for proof that the defendant knew the victim's underage status." *Id*. at 32. This "commonsensical understanding of § 1591(c) also vindicates the 'cardinal rule that, if possible, effect shall be given to every clause and part of a statute." *Id*. (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065, 2071 (2012)). The Second Circuit also noted that the general mens rea presumption in the criminal context "does not apply to sex crimes against minors." *Id*. The interpretation of § 1591(c) (i.e. that the government may prove that the defendant had a reasonable opportunity to observe the victim in lieu of proving knowledge or reckless disregard of the victim's age) is consistent with other "federal child-protective statutes that use nearly identical language and that have been interpreted to 'lack [ ] mens rea requirements with respect to [the victim's] age." *Id*. at 33 (quoting *United States v. Jennings*, 496 F.3d 344, 353 (4th Cir. 2007). For example, in 18 U.S.C. § 2241 and § 2243, two provisions that punish the sexual abuse of children provide specific state of mind requirements: "the Government need not prove that defendant knew" the victim was a minor. 18 U.S.C. § 2241 and § 2243. The court further notes that both federal and state statutory rape laws do not require a defendant to know that the victim was underage. *See United States v. Moxie*, 752 F.3d 1271 (11th Cir. 2014) (noting that the terms "reckless disregard" and "reasonable opportunity to observe" "are familiar legal concepts that have played an integral role in defining proscribed conduct over the years). Furthermore, as noted by the Ninth Circuit, the phrase "a reasonable opportunity to observe" is not unconstitutionally vague and comports with due process. *United States v. Rico*, 619 Fed. App'x. 595, 598 (9th Cir. 2015).

*United States v. Lundy*, No. 14CR3256 JM, 2016 WL 499167, at *2 (S.D. Cal. Feb. 9, 2016).

Purnell has offered no authority that conflicts with the above. Moreover, Purnell has not demonstrated that the phrase "reasonable opportunity to observe" fails to provide a person of ordinary intelligence sufficient information to contemplate what is prohibited by the statute. [T]he terms used in the phrase "are not esoteric or complicated terms devoid of common understanding." *Rico*, 619 Fed. App'x at 599. As such, they do not require a definition, nor do they deprive Purnell of due process.

**CONCLUSION**

Based upon the above, Purnell has failed to demonstrate any legal error during his trial. Accordingly, his motion for new trial is DENIED.

IT IS SO ORDERED.


May 25, 2017/s/ John R. Adams
DatedJUDGE JOHN R. ADAMS
United States District Judge