IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:16CR162 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| | ) | |
| RICHARD PURNELL, | ) | |
| | ) | |
| Defendant. | | |

**THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM**

Now comes the United States of America, by and through counsel, David A. Sierleja, Acting United States Attorney, and Bridget M. Brennan and Linda H. Barr, Assistant United States Attorneys, and hereby submits its Sentencing Memorandum to address the Guidelines calculation set forth in the Defendant's Presentence Investigation Report ("PSR").

As an initial matter, the Sentencing Guidelines clearly state that any conviction under 18 U.S.C. § 1591(b)(2) must be calculated using a base offense level of 30. *See* United States Sentencing Guidelines ("USSG") § 2G1.3. A jury found Defendant guilty of such an offense on September 6, 2016, thus Defendant's base offense level is 30. The applicability of the specific offense characteristics, adjustments and enhancements identified in the PSR are discussed below.

**I.      Undue Influence (USSG § 2G1.3(b)(2)(B))**

Application Note 3(B) to Section 2G1.3(b)(2)(B) states that when the "participant is at least 10 years older than the minor," there is a rebuttal presumption in favor of including this

offense characteristic because "some degree of influence can be presumed because of the substantial difference in age."  The Application Note also recognizes that this offense characteristic is a fact-based inquiry designed to determine whether the "voluntariness" of the minor's behavior was compromised.  *Id*.  Inclusion of this offense characteristic requires some evidence that the minor was in fact influenced." *See United States v. Turner*, 2017 U.S. App. LEXIS 7859, *7 (6th Cir. 2017), *citing United States v. Lay*, 583 F.3d 436, 442-43 (finding defendant failed to rebut presumption where victim was a young, troubled 15-year old).  And, notably, the fact that the victim may have "agreed" to the relationship does not negate undue influence.  *Turner*, 2017 U.S. App. LEXIS 7859 at *9; *Lay*, 583 F.3d at 446.

The rebuttal presumption applies here.  The victim was just 14 years old when Defendant solicited her on Backpage.com and through Talkatone, Inc.'s application ("app") and, thereafter, engaged in numerous instances of commercial sex with her.  (PSR  6, 7; Def't Testimony, PageID# 807; Victim Testimony, PageID# 484, 486-87, 491-92, 558-59).  Defendant was 55 years old at the time of the offense – *41 years older than the victim*.  (PSR, p. 2 "Identifying Data").

Given the facts and circumstances of this offense, all of which were established at trial, Defendant cannot rebut this presumption.  Defendant kept a strategically-placed rifle in his bedroom, which was clearly visible to the victim each time she was there.  As FBI Special Agent Shawn Hare explained, directly to the left of Defendant's bed was a couch on which a long firearm was found and secured during the search of Defendant's home on May 6 – the night he expected to engage in commercial sex with the victim and another minor female.  (SA Hare Testimony, PageID# 366.)[1]  In fact, the rifle was in such close proximity to the Defendant's bed

---

[1] Law enforcement officers were aware of and prepared to recover a firearm at Defendant's residence on May 6, 2016, because the victim had told the agents that it would be there, in his bedroom, and laying on the couch.

that an adult male would simply have to put his foot on the floor and reach his arm over to the couch in order to grab the rifle.  (*Id*. at 373).  Photographs of the rifle and the configuration of Defendant's bedroom were presented at trial as Government's Exhibit 3.  (*Id*. at 366).  Additionally, beyond the implicit threat inherent in seeing a long-barrelled rifle near the bed, Defendant also *told* the victim "a lot" of times that he would "do something to [her]" if she told anyone about him.  (Victim Testimony, PageID# 496).

Defendant was aware that his victim was vulnerable, and he used her vulnerabilities for purely selfish reasons.  Take the November 7, 2015 trip to Canton:  Defendant testified that he understood her to be at a home where others could prevent her from consuming alcohol.[2] Nevertheless, a recovering alcoholic himself, Defendant traveled to Canton, picked her up, drove her to his house to engage in sex, and then demanded that she find someone to come pick her up from his house – any place at all was fine as long as she left his house.

Defendant's attempts to rebut this presumption amount to nothing more than victim-blaming.  Defendant was the adult in the room – literally.  He is the one that should be held accountable.  Moreover, as the Sixth Circuit held in *Turner*, 2017 U.S. App. LEXIS 7859 at *9 and *Lay*, 583 F.3d at 446, that the victim may have agreed to some sexual activity does not negate the inclusion of this specific offense characteristic.

Thus, when considering the 41-year age difference, Defendant's consistent placement of a rifle near the bed during these encounters, his threats to do her harm, and that he knew her to be troubled, the record establishes by a preponderance of the evidence that Defendant unduly

---

Mistakenly, the victim believed the firearm to be a shotgun, which is also how she referred to it when she described what she recalled about the Defendant's bedroom.  (Page ID 486-87).

[2] The victim testified that she initially described the Canton home as a rehab-type facility, but later explained to the Defendant that it was a foster home.  Whether she was an alcoholic, in a foster home, or both, Defendant was aware of and capitalized on her vulnerabilities.

influenced his 14-year old victim.  This two-level offense characteristic is properly included in the Guidelines calculation.

## II.     Use of Computer or Interactive Device (USSG § 2G1.3(b)(3)(A))

A defendant's Guidelines calculation must be increased by two levels if the "offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct.  The Application Notes state that the term computer "has the same meaning given that term in 18 U.S.C. § 1030(e)(1), which states as follows:

> an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable handheld calculator, or other similar device.

Defendant acknowledged using his computer, and particularly the website Backpage.com, to identify the victim in this case.  After using the computer to ascertain a telephone number where she could be reached (whether it was her number, Ronald Pratt's number, or a Talkatone number), Defendant then contacted the victim using his cellular telephone.  A computer and its equivalent were used to communicate with the victim in this case. Defendant does not dispute the inclusion of this offense characteristic, which results in an additional two-level increase in his Guidelines calculation.

## III.    Commission of a Sex Act (USSG § 2G1.3(b)(4))

Again, Defendant's trial testimony conclusively establishes that this offense characteristic is properly included in his Guidelines calculation.  Defendant acknowledged that he engaged in commercial sex acts with the victim, and that his only purpose for contacting her was to engage

4

in commercial sex.  (Def't Testimony, PageID# 805, 807, 834).  Indeed, in describing the first

time he saw the victim, Defendant stated as follows:

> Q:     You can finish what happened on that first meeting with her.
>
> A.     Well, she came in.
>
>        Said, "Would you like to come upstairs?"
>
>        We went upstairs.  We undressed.  We had sex.  I paid her.  She left.
>
>        It was a very short –
>
> Q:     So it was a fairly short meeting at that time?
>
> A:     Yeah.  She was gone in 20, 25 minutes.  She was out of my house.

(*Id*. at 805).

For purposes of considering this offense characteristic, Defendant's acknowledgment is

consistent with the victim's testimony that they engaged in commercial sex.  (Victim Testimony,

PageID# 484, 486-87, 491-92, 558-59).  It is also consistent with the text messages he exchanged

with FBI Special Agent Andrew Burke, which detailed his interest in engaging in commercial

sex with *two* minors (one of which he believed was the victim) and the amount of money he was

willing to pay to do so:

| 40 | Inbox | From<br>+14406653725 | 5/6/2016<br>6:42:57 PM | | So how much if you both come and play with each other and me | |
|----|-------|------|------|---|------|---|
| 41 | Sent | To<br>+14406653725 | 5/6/2016<br>6:44:06 PM | | 180 hr, 120hh. Me bb, her no bb | |
| 42 | Inbox | From<br>+14406653725 | 5/6/2016<br>6:44:54 PM | | 180 total or a piece? | |
| 43 | Sent | To<br>+14406653725 | 5/6/2016<br>6:45:51 PM | | Total | |
| 44 | Inbox | From<br>+14406653725 | 5/6/2016<br>6:46:13 PM | | Let's do an hour | |

(Gov't Ex. 1B).

Defendant does not dispute this two-level increase for engaging in a sex act.  In fact, he concedes that he had sex with the victim "at least three times."  (Def't Sent. Memo, p. 4). Accordingly, Defendant's Guidelines calculation should be increased by an additional two levels for engaging in a sex act.

## IV.    Obstruction of Justice (USSG § 3C1.1)

A two-level adjustment applies if a defendant obstructs "the administration of justice" concerning the prosecution "of the instant offense of conviction" where "the obstructive conduct related to [] the defendant's offense of conviction and any relevant conduct." U.S.S.G § 3C1.1. Obstructive conduct includes "committing . . . perjury."  *Id.* at n. 4(B).  For Guidelines purposes, perjury occurs "when a witness, testifying under oath or affirmation, 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory.'"  *United States v. Lawrence*, 308 F.3d 623, 631- 32 (6th Cir. 2002) (*quoting United States v. Dunnigan*, 507 U.S. 87, 94 (1993)); *see also United*

6

*States v. Kennedy*, 714 F.3d 951, 962 (6th Cir. 2013). If the false testimony "would tend to influence or affect the issue under determination," then it is material. USSG § 3C1.1 cmt. n. 6.

Before imposing the two-level adjustment for perjury, the district court must: (a) identify the portions of the defendant's testimony that constitute perjury, and (b) make a specific finding concerning each element of perjury, or, make a finding that encompasses the predicates for perjury. *Lawrence*, 308 F.3d at 632. When identifying those portions of the testimony that constitute perjury, "courts may rely upon lists of a defendant's perjurious statements provided by the government . . . [if the court] makes clear that it has independently adopted the prosecutions recital." *United States v. Macias-Farias*, 706 F.3d 775, 782 (6th Cir. 2013) (internal citations omitted).

Additionally, courts may conclude that a defendant's testimony was perjurious by crediting the testimony of other witnesses, including law enforcement witnesses, over the defendant. *United States v. Taylor*, 2001 WL 278506, *3 (6th Cir. 2001) (upholding an obstruction of justice enhancement, in part, on finding that "[t]he court was entitled to credit the officers' testimony in this regard and, in the same vein, to conclude that Taylor deliberately lied under oath when he denied his involvement"); *United States v. Balogun*, 2012 WL 360812, *8 (6th Cir. 2012) (concluding that the district court properly applied an obstruction of justice enhancement where the court "identified several specific perjurious statements Balogun made on the stand" and "the testimony of multiple law enforcement officials directly contradicted each of these statements"); *United States v. Darden*, 508 Fed. Appx. 387, 389 (6th Cir. 2012) (recognizing that a defendant's right to testify does not permit him to commit perjury, court upheld obstruction of justice enhancement after making specific findings as to how defendant's trial testimony was plainly false and contradictory to other witnesses, including law enforcement

7

witnesses); *United States v. Boring*, 557 F.3d 707, 712-13 (6th Cir. 2009) (the right to testify does not include a right to commit perjury, and defendant's trial testimony, which was so different from another witness and had to be disbelieved by the jury in order for them to find guilt, warranted the obstruction of justice enhancement).

Beyond its independent evaluation of the evidence and trial testimony, the court can also consider the jury's verdict when assessing whether the defendant committed perjury. *Boring*, 557 F.3d at 712.  A factual determination of perjury is supported by a jury's guilty verdict that necessarily resulted in the jury disbelieving defendant's testimony.  *Id.* (upholding the district court's finding of falsity because "the jury had to credit the [government witness's testimony] and reject Boring's in order to convict").  For example, if a jury convicts the defendant on a point he flatly denied while testifying, *e.g.* knowing and recklessly disregarding the young age of his victim, the court can reasonably conclude that the jury found defendant to be incredible.  *Id.* Finally, when a defendant's testimony is in stark contrast to the other credible witnesses or records, it is reasonable to conclude that the defendant's testimony was willfully false, and not just a result of mistake or faulty memory.  *Id.* at 712-13.

In this case, the jury heard testimony from the victim and law enforcement officers in addition to viewing explicit text message exchanges between Defendant and an undercover agent, all of which established that Defendant knew the victim's young age at the time he was enticing and soliciting her to engage in commercial sex.

With respect to the minor's testimony, she described a conversation between her and the Defendant that occurred at some point after the first time she went to his house:

Q:    Did there ever come a time when you told Rick your age?

A:    Yes.

8

Q:     Tell us about that.

A.     He asked me how old I really was because I didn't look the age I put on Backpage.  And I told him my age.

Q:     What number did you say?

A:     Fourteen.

Q:     And is that how old you were?

A:     Yes.

Q:     What did he say in response?

A:     That's fine.

(PageID# 487-88).  The victim testified further that Defendant continued to seek her out and engage in commercial sex with her *after* learning that she was just 14 years old.   In total, the victim stated that she engaged in commercial sex with the Defendant more than five times.

Defendant's knowledge of the victim's age clearly played out in the May 5 and May 6 text messages presented at trial:

| 26 | Inbox | From +14406653725 | 5/6/2016 6:04:42 PM | | Hh to start, you might make me want more:) |
|----|-------|-------------------|---------------------|---|------------------------------------------|
| 27 | Sent | To +14406653725 | 5/6/2016 6:05:48 PM | | Lol...im with my girl, she wanna play..not the white girl i show you |

| 32 | Inbox | From +14406653725 | 5/6/2016 6:19:34 PM | | Do you two play with one another? | |
|----|-------|--------------------|---------------------|--|-----------------------------------|--|
| 33 | Sent | To +14406653725 | 5/6/2016 6:20:24 PM | | Yes | |
| 34 | Inbox | From +14406653725 | 5/6/2016 6:23:05 PM | | That could be fun | |
| 35 | Sent | To +14406653725 | 5/6/2016 6:23:36 PM | | Youll like her | |
| 36 | Inbox | From +14406653725 | 5/6/2016 6:32:32 PM | | Is she white, black, big,small, cute or what? | |
| 37 | Sent | To +14406653725 | 5/6/2016 6:34:07 PM | | She cute and small like me...could be my twin, older tho | |
| 38 | Inbox | From +14406653725 | 5/6/2016 6:40:01 PM | | How old | |
| 39 | Sent | To +14406653725 | 5/6/2016 6:41:01 PM | | Haha don worry babe. She jus turn 17, but she fresh. | |
| 40 | Inbox | From +14406653725 | 5/6/2016 6:42:57 PM | | So how much if you both come and play with each other and me | |

Remarkably, Defendant lied about knowing the victim's age when he testified under oath at trial.  Given the damning nature of his own May 5 and May 6 text messages, Defendant tried to explain his conduct by saying that he saw the messages (a fact he initially denied when interviewed by FBI agents) and just decided to get a better explanation of their ages when they arrived at his house because, in his words, he had no idea who was actually coming over.  (Def't Testimony, PageID# 863).   Besides, he argued alternatively, she had to be a "19-year old college girl" because that is what it said on the website.  (*Id*. at 804).  Defendant's testimony was knowingly false.

Setting aside the patently clear text messages, what grown man, looking for *adult* companionship, disregards text messages clearly stating that two juveniles are coming to his home to engage in prohibited sexual conduct?  Moreover, Defendant acknowledged having previously been robbed by someone he encountered on Backpage.com.  He also testified that he had to ask a different person to leave his home when the woman that arrived looked nothing like the picture he saw on the website.  (Def't Testimony, PageID# 804).  And yet, in spite of these experiences, he testified that he had some concerns about the text messages discussing the girls' ages such that he had no idea who was coming over, but - after resending his home address to them - was waiting to settle the matter when they arrived … at his house … where he had $600 in cash in his pocket and stacks of cash in his home office.  (Gov't Ex. 3 (search warrant photos of home); Gov't Ex. 3A (cash recovered from Defendant's pocket during arrest); Def't Testimony, PageID# 867).

Furthermore, Defendant ran to the bathroom and deleted his text messages when he saw federal agents and police officers approaching his home.  This is further evidence that he *knew* – and feared that law enforcement would discover – that he was expecting two juveniles at his house for prohibited sexual conduct.

Defendant attempts to avoid the two-level enhancement for obstruction by arguing that he could have been convicted on a "reckless disregard" theory.  That is true.  And like his denials of knowing the victim's young age, he also denied that he recklessly disregarded her age.  (Def't Testimony, PageID# 834).  He denied this point during cross-examination despite being forced to acknowledge that he had previously told law enforcement officers that he thought she was childish when she acted young and immature while dancing for him in his house and during their ride back from Canton, all of which were observations he tried to explain away by saying that he

11

sometimes acted childish as an adult, too.  (*Id.* at 848).  Considering these acknowledgements along with the plain language of the May 5 and May 6 text messages, it is clear that even Defendant's denial of reckless disregard was also perjurious testimony.

Accordingly, the Court has more than sufficient evidence to find that the Defendant knowingly and intentionally provided materially false and misleading testimony at trial such that a two-level adjustment for obstruction of justice should be added to the base offense level.

## V.  Repeat and Dangerous Sex Offender Against Minors  (USSG § 4B1.5(b))

Pursuant to Section 4B1.5, the offense level is increased by five levels when the offense of conviction is a "covered sex crime" and "the defendant engaged in a pattern of activity involving prohibited sexual conduct . . ."  Covered sex crimes include convictions for sex trafficking of children as codified in 18 U.S.C. § 1591.  (*Id.*, App. Note 2).  In determining whether a defendant engaged in a "pattern of activity," the Court is advised that a pattern of activity is established "if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor."[3]  *See United States v. Corp*, 668 F.3d 379 (6th Cir. 2012) (while recognizing that two instances of prohibited sexual conduct was sufficient, upheld application of 4B1.5 when three instances were presented to the court); *United States v. Al-Cholan*, 610 F.3d 945, 955 (6th Cir. 2010) (affirmed application of 4B1.5 where pattern of activity was established by a preponderance of the evidence); *United States v. Whalen*, 578 Fed. Appx. 533, 545 (6th Cir. 2014) (sufficient evidence of three instances of sexual contact with a minor met the two-instance threshold requirement for applying the Section 4B1.5 enhancement).

---

[3] Notably, the "Background" information for Section 4B1.5 states, in pertinent part, that "section 632 of Public Law 102-141 and section 505 of Public Law 105-314 directed the Commission to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors."

The jury found beyond a reasonable doubt that Defendant knowingly engaged in commercial sex with his then-14 year old victim.  The victim bravely came to Court and described how, after the first time she went to Defendant's house in Parma, he asked her what her age really was since she did not look the age she posted on Backpage.com.  Truthfully, she told him that she was only 14 years old.  Defendant's response: "That's fine."  After learning how young she was, Defendant sought her out for commercial sex approximately four more times, and even facilitated her leaving a foster home in Canton to satisfy his own perverse needs.  The victim was a credible witness with nothing to gain by testifying in open court.  While Defendant did not agree that he met the victim approximately more than four times after learning her age, he did admit at trial that he had sex with the victim on *three* separate occasions.[4]

Defendant's admission alone is sufficient evidence, but this Court may also credit the testimony of the victim, the May 5 and May 6 text messages, and Defendant's deletion of all the incriminating text messages in concluding that the Defendant knowingly engaged in a pattern of sexually exploitive activity.  Simply stated, his own admissions are sufficient evidence to impose the five-level increase, but the May 6 text messages discussing arrangements for prohibited sexual conduct with not one, but *two* juveniles, it is clear that Defendant's conduct meets the Section 4B1.5 threshold requirements for finding a pattern of prohibited sexual conduct.

## VI.    Sentencing Recommendation

In enacting the Justice for Victims Trafficking Act of 2015, Congress expressed its clear intent to "make traffickers and buyers equally culpable for sex trafficking offenses."  Justice for Victims Trafficking Act of 2015, Public Law No. 114-22, Section 108 (May 29, 2015).

---

[4] Defendant now acknowledges that it was "at least three" times.  (Def't Sent. Memo., p. 4).

Nevertheless, Defendant argues that he should receive four years less time than Ronald Pratt, Jr., the man who recruited and pimped the victim.

The government recognizes that a life sentence may be greater than necessary in this case.  The government does not agree, however, that Defendant is less culpable than Pratt for the following reasons:

- Defendant engaged in sexual conduct with the victim, going so far as to remove her from a rehabilitation facility (which he later learned was a foster home) and extracting payment in the form of sexual activity before demanding that she find some way to leave his house;

- He threatened the victim with harm if she told anyone about him, a fear so real that she initially misidentified him to law enforcement;

- Defendant intimidated her by keeping a rifle by the bed during their encounters;

- Like Pratt, Defendant encouraged "her" to bring another juvenile to his home on May 6, 2016, so that he could engage in sexual conduct with her and the other minor;

- Defendant chose to forego a timely plea agreement, which is a constitutional right but a decision that alters the Guidelines calculation;

- He perjured himself while testifying at trial; and

- Defendant has a criminal history spanning 24 years.

It is the government's sentencing recommendation that the Defendant should be sentenced to a term of imprisonment that takes all of these factors into account, along with the remaining Section 3553(a) factors.  The seriousness of this offense cannot be overstated. Further, that the Defendant continues to minimize his conduct, blame the victim and others, and

14

otherwise deny the plain and simple evidence that convicted him, it is clear that a significant

term of imprisonment should be imposed. A sentence of less or even equal time to Pratt would

not serve to address Congress's reasoned intent to hold buyers as equally accountable as sellers,

the aggravating factors in this case, or Defendant's personal history and characteristics.


Respectfully submitted,

DAVID A. SIERLEJA
Acting United States Attorney

By:     /s/ Bridget M. Brennan
        Bridget M. Brennan  (0072603)
        Assistant United States Attorney
        Suite 400, U.S. Courthouse
        801 West Superior Avenue
        Cleveland, Ohio 44113
        Tel. No. (216) 622-3810
        Fax No. (216) 522-8354
        E-mail:  bridget.brennan@usdoj.gov


By:     /s/ Linda H. Barr
        Linda H. Barr (PA: 41079)
        Assistant United States Attorney
        Federal Building
        2 South Main Street, Room 208
        Akron, OH 44308
        (330) 761-0521
        (330) 375-5492 (facsimile)
        Linda.Barr@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of July, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ Bridget M. Brennan
Bridget M. Brennan
Assistant United States Attorney